# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00526-COA

**ISRAEL LENIN SUAREZ**                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2023 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/30/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Israel Suarez was convicted of burglary of an occupied dwelling under circumstances likely to terrorize the occupant (home invasion). The Newton County Circuit Court sentenced Suarez to serve eighteen years in the custody of the Mississippi Department of Corrections (MDOC).

¶2. Suarez now appeals his conviction, arguing that the evidence was insufficient to support his conviction and that the trial court erred in refusing his lesser-included-offense jury instruction. Finding no error, we affirm Suarez's conviction and sentence.

## FACTS

¶3.     On the morning of March 7, 2022, Lauren Ivy was asleep in her family's home in Hickory, Mississippi. Lauren's parents had already left for work, and she was home alone. Lauren testified that she woke up to the sound of someone knocking on the door and repeatedly ringing the doorbell. Lauren's parents had instructed her not to answer the door if she was home alone. Because the knocking and ringing continued for nearly ten minutes, however, Lauren decided to check the front door and side door (the only two exterior doors with doorbells) to see if anyone was there. Lauren testified that she did not see anyone at the front door or side door.

¶4.     Lauren then heard the garage door open, which triggered the house alarm. Lauren testified that when she heard the alarm go off, she froze. She then reached out to her parents, who told her to get out of the house. Lauren's parents called the police to report the burglary.

¶5.     After Lauren exited the house, she went to the tree line of the property. Lauren testified that as she was standing near the tree line, she saw a man in a white shirt and a blue hat walking toward her house from some storage buildings on the property. Lauren then ran to her neighbors' house, where she waited until the police arrived.

¶6.     Deputy Zachary Redditt and Deputy Brandon Lair of the Newton County Sheriff's Office were dispatched to the Ivy home. When the deputies arrived, they observed that the Ivys' garage door was halfway open. The deputies entered the garage and saw that the door leading to the interior of the house was also open. The deputies then entered the house to investigate. Deputy Redditt testified that they eventually discovered a man, later identified as Suarez, hiding under the bed in Lauren's room.

2

¶7. After the officers took Suarez into custody, Deputy Redditt interviewed him at the sheriff's office. Suarez provided an oral statement to Deputy Redditt, who recorded the statement with his cell phone. In the statement, Suarez admitted to entering the Ivys' house. Suarez explained that he intended to take the Ivys' car from the garage, so he entered the house to look for the keys. Suarez also admitted to hiding under Lauren's bed once he realized that the deputies had arrived on the scene.

¶8. On the same day Suarez was arrested, Lauren's father, Dustin Ivy, discovered that $1,660 in cash was missing from the house. When Suarez's property was inventoried upon arrest, he was found with $1,460 in cash. Suarez claimed the money belonged to him.

¶9. Suarez was ultimately indicted for burglary of a dwelling under circumstances likely to terrorize the occupants (home invasion) pursuant to Mississippi Code Annotated section 97-17-23(2) (Rev. 2020). During Suarez's trial, the jury heard testimony from Lauren, Dustin, Deputy Redditt, and Thelma Evans, the jail administrator at the Newton County Sheriff's Office. At trial, Lauren recounted the events that occurred on the morning of the burglary. She testified that she was "terrified" during the burglary. The recording of Suarez's statement was also entered into evidence and played for the jury.

¶10. At the close of the State's case-in-chief, Suarez's attorney moved for a directed verdict. Suarez's attorney argued that the State failed to establish a prima facie case of burglary of an occupied dwelling. Suarez's attorney specifically asserted that the State failed to show that Suarez and Lauren were ever in the home together or that Suarez entered the house with the intent to commit a crime. After hearing arguments, the trial judge denied

3

Suarez's motion.

¶11. The jury ultimately convicted Suarez of burglary of an occupied dwelling under circumstances likely to terrorize the occupant. The trial court sentenced Suarez to serve eighteen years in the custody of the MDOC.

¶12. Suarez filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the trial court denied. This appeal followed.

## DISCUSSION

### I. Sufficiency of the Evidence

¶13. Suarez first argues that the State's evidence was insufficient to prove that he committed a burglary under circumstances likely to terrorize the occupant of the house. Suarez therefore maintains that the trial court erred in denying Suarez's motion for a directed verdict and his JNOV motion.

¶14. A motion for a directed verdict and a motion for a JNOV typically challenge the sufficiency of the evidence. *Haymon v. State*, 346 So. 3d 875, 881 (¶14) (Miss. 2022). We apply a de novo standard when reviewing a trial court's denial of these motions. *Id*. In considering whether the evidence is sufficient, this Court "views all evidence in the light most favorable to the State." *Id*. We "will reverse and render judgment in favor of the defendant only if the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty[.]" *Id*. (internal quotation marks omitted).

¶15. "Burglary of a dwelling has two elements: (1) unlawful breaking and entering and (2)

4

intent to commit a crime therein." *Alston v. State*, 287 So. 3d 182, 185 (¶12) (Miss. 2019); *accord* Miss. Code Ann. § 97-17-23(1). Suarez was convicted of an enhanced type of burglary under section 97-17-23(2), which provides an additional sentence for burglary of a dwelling if the crime was committed "under circumstances likely to terrorize any person who is actually occupying the house at the time of the criminal invasion." Miss. Code Ann. § 97-17-23(2).

¶16. On appeal, Suarez does not maintain that the State presented insufficient evidence to show that he committed a burglary; rather, he challenges the sufficiency of the evidence showing that he committed a burglary under circumstances likely to terrorize an occupant. Suarez maintains that the evidence is insufficient to sustain his conviction under the enhancement in subsection (2) because Lauren testified that she never saw anyone in the house.

¶17. This Court has held that "the phrase 'likely to terrorize' is self-explanatory and needs no definition." *Johnson v. State*, 242 So. 3d 145, 165 (¶42) (Miss. Ct. App. 2017). The record reflects that Lauren was home alone on the morning of the burglary. She was woken up by someone banging on the door to her house and repeatedly ringing the doorbell. Lauren testified that while she was still inside the house, she heard the garage door open, which triggered the alarm system. Lauren testified she was inside of the house when someone opened the door and triggered the alarm—she just never saw anyone inside the house. Lauren's testimony reflects that when she heard the alarm, she did not walk through the house to discover who was there; instead, she contacted her parents and exited the house.

Furthermore, Lauren testified at trial that she "was terrified" during the burglary. As stated, sheriff's deputies eventually found Suarez inside the home under Lauren's bed.

¶18. Suarez also asserts that his behavior before the burglary—repeatedly knocking on the door and ringing the doorbell—shows that he did not anticipate anyone being inside the house and that he did not intend to terrorize anyone. The State argues that subsection (2) does not contain an intent requirement. We agree, and we therefore find no merit to Suarez's argument that he cannot face the additional charge and punishment of subsection (2) because he did not know the house was occupied or intend to terrorize anyone.

¶19. After viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence for a reasonable jury to find Suarez guilty of burglary under circumstances likely to terrorize a person actually occupying the house.

## II. Lesser-Included-Offense Instruction

¶20. Suarez next argues that the trial court erred when it refused to give Suarez's proposed lesser-included-offense instruction, which would have allowed the jury to convict him of burglary without the "circumstances likely to terrorize" element.

¶21. We review a trial court's refusal of a proposed lesser-included-offense instruction de novo. *Anderson v. State*, 361 So. 3d 609, 614 (¶13) (Miss. 2023). We recognize that "a defendant is entitled to have jury instructions given which present his theory of the case." *Id*. However, the supreme court has held a trial court "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id*. "To be entitled to a lesser-included offense instruction, 'a

6

defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense.'" *Id*. In reviewing the refusal of a lesser-included-offense jury instruction, this Court "must view the evidence in the light most favorable to the defendant, draw all reasonable inferences in his favor, and take into account 'that the jury may not be required to believe any evidence offered by the State.'" *Id*. (quoting *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013)). "[I]f no reasonable jury could have found the defendant guilty of the lesser-included offense, we will uphold the denial of the proposed instruction." *Id*.

¶22.    During the jury instruction conference, Suarez's attorney proposed Instruction D-16, which stated: "The [c]ourt instructs the [j]ury that, if the evidence supports such, you may find him guilty of a lesser offense of burglary of an *unoccupied* dwelling." (Emphasis added).[1] The State objected, arguing that no evidence was presented at trial to show that the Ivys' house was unoccupied at the time of the burglary. The State maintained that the evidence clearly showed that Lauren was inside the house at the time of the burglary. The trial court agreed that Suarez's proposed jury instruction was not supported by the evidence, and the trial court refused the instruction. On appeal, Suarez argues that the trial court should have given his "lesser-included-offense" instruction because evidence presented at trial showed that when Suarez entered the home, Lauren was already outside, watching from a tree line as Suarez approached her house.

---

[1] Other than Instruction D-16, Suarez's attorney did not propose a jury instruction for burglary without the enhancement of "likely to terrorize."

7

¶23. The State asserts that there is no such "lesser offense of burglary" as "burglary of an unoccupied dwelling." We agree. As stated, "[b]urglary of a dwelling has two elements: (1) unlawful breaking and entering, and (2) intent to commit a crime therein." *Alston*, 287 So. 3d at 185 (¶12). Whether someone is inside the house at the time of the burglary makes no difference to a person's guilt under section 97-17-23(1). Section 97-17-23(1) provides that a person can be found guilty of burglary of a dwelling "whether there shall be at the time some human being in such dwelling house or not[.]" Accordingly, we find that Suarez's proposed instruction simply was not a proper statement of the law in this regard.

¶24. As stated above, Suarez bore the responsibility at trial to show that he was entitled to a lesser-included-offense instruction regarding his charge under section 97-17-23(2) by pointing to "some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Anderson*, 361 So. 3d at 614 (¶13). After the State objected to Suarez's proposed jury instruction and argued that no evidence supported Suarez's instruction, the transcript reflects that Suarez failed to make any argument or point the trial judge to any evidence that would support the instruction. *See Croom v. State*, 374 So. 3d 609, 613-14 (¶11) (Miss. Ct. App. 2023); *Clayton v. State*, 375 So. 3d 673, 679 (¶12) (Miss. Ct. App. 2023).

¶25. For these reasons, we find that the trial court did not err by refusing Suarez's proposed jury instruction.

**CONCLUSION**

¶26. After our review, we find no error. We therefore affirm Suarez's conviction and sentence.

¶27. **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., McDONALD AND McCARTY, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**